UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME FINANCIAL, INC.,

    Plaintiff,

                                          Case No. 13-12236
v.                                 HON. TERRENCE G. BERG

COMERICA BANK,

    Defendant.
_____/

**OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION TO DISMISS (DKT. 6)**

    Plaintiff Prime Financial, Inc. is suing Defendant Comerica Bank to recover the value of a mortgage it alleges was wrongfully paid to Defendant as a result of what Plaintiff claims to be Defendant's "fraudulent and tortious conduct."

    This matter is now before the Court on Defendant's motion to dismiss for lack of jurisdiction in light of the *Rooker-Feldman* doctrine and on the basis of res judicata (Dkt. 6). The motion was briefed and the Court subsequently heard oral argument. During the motion hearing, a significant portion of the argument was focused on the question of whether, under Michigan law, Plaintiff had the ability to appeal the prior state court order. Following the hearing, the Court ordered supplemental briefing on that issue. The parties both filed supplemental briefs (Dkts. 20-22). The motion is now fully briefed and ready for determination.

    For the reasons set forth below, Defendant's Motion to Dismiss is **DENIED**.

I.      FACTUAL BACKGROUND

This case involves a somewhat complicated set of facts, centered on a piece of property located at 505 N.W. Jackson Avenue, Jackson, Michigan (the "Jackson Property"). The claims at issue arise from the parties' alleged conduct with respect to various mortgages taken against the Jackson Property.

On September 7, 2007, Defendant Comerica Bank ("Comerica") loaned $500,000 to Notzrim Property Management Company ("Notzrim"), a company owned by Mark Rankin, for the purchase of the Jackson Property. This loan was secured by a mortgage (the "Comerica Mortgage") on the Jackson Property.[1] The Comerica Mortgage was recorded on September 20, 2007 at Liber 1884, Page 272, Jackson County Records.

In May 2008, Notzrim granted Plaintiff Prime Financial, Inc. ("Prime") a mortgage (the "Prime Mortgage") on the Jackson Property and another property in Ypsilanti, Michigan (the "Ypsilanti Property"), to secure a loan of $150,000. As stated previously, at the time Prime loaned Notzrim the $150,000 and took the Prime Mortgage to secure that loan, the Comerica Mortgage had already been recorded and was a matter of public record. The Prime Mortgage was purportedly recorded on March 3, 2009.

---

[1] For reasons that are unclear, although Notzrim actually owned the Jackson Property, the Comerica Mortgage on the Jackson Property was given by Jackson R&R Mini Mart, LLC ("JRRMM"), a Michigan LLC operating a gas station on the Jackson Property and having Rankin as its sole member.

A year after the Prime loan and Mortgage, in May 2009, Notzrim defaulted on its loan from Comerica.  Comerica then apparently discovered that Notzrim was the legal owner of the Jackson Property, not JRRMM.  Prime alleges that Notzrim subsequently conveyed the Jackson Property to JRRMM and that Comerica drafted a "Continuing Collateral Mortgage," containing language purporting to make it effective as of September 7, 2007 (the date of the original Comerica loan and Mortgage).  Prime claims that this conduct was intentional and for the purpose of defeating Prime's interest in the Jackson Property.  This new mortgage, dated May 11, 2009, was recorded on May 13, 2009 at Liber 1921, Page 714, Jackson County Records.

On August 5, 2009, Comerica sued Notzrim, JRRMM, and Ypsilanti R&R Mini Mart, LLC (another of Rankin's companies, and the operator of a gas station on the Ypsilanti Property) in Washtenaw County Circuit Court, Case No. 09-923-CH (the "State Court Action"), for the purpose of having a receiver (the "Receiver") appointed over the assets of JRRMM and empowered to sell those assets, including the Jackson Property.  On August 19, 2009, an order was entered in the State Court Action appointing Steven Smith as the Receiver.  On or about September 9, 2009, Comerica asserts that a default was entered against all defendants in the State Court Action.[2]

---

[2] The Order entering the default was identified as being attached to Comerica's Motion to Dismiss as Exhibit A; however, the document filed as Exhibit A appears to be an unsigned, undated request for default, not the entry of default itself.  Whether the default was actually entered is not material to the resolution of this motion.

On December 31, 2009, pursuant to § 303 of the United States Bankruptcy Code, Prime filed an involuntary petition for Chapter 7 Bankruptcy against Notzrim in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 09-79671 (the "Bankruptcy Case"). On January 26, 2010, the Bankruptcy Court appointed David W. Allard as the Chapter 7 Trustee of Debtor Notzrim's estate.

On March 30, 2010, the Receiver and Comerica moved in the State Court Action for an order allowing the Receiver to sell the Ypsilanti Property free and clear of all liens. The motion was noticed for April 14, 2010. At that hearing, counsel for Prime appeared and argued that the true owner of the Ypsilanti Property was the Bankruptcy Estate of Notzrim. Prime's counsel then asked for an adjournment to provide Prime time to, "file appropriate briefs and quite frankly to bring these–these issues to the attention of the–of the U.S. Bankruptcy Court and the Chapter 7 trustee whose job it [sic] to administer um–the assets of Notzrim and who is clueless about what's going on here." (Dkt. 6, Ex. B, April 14, 2010 Hr'g Tr. at 9). The hearing was subsequently adjourned until May 5, 2010. (*Id.* at 12).

On April 16, 2010, the Receiver and Comerica moved in the State Court Action for an order allowing the Receiver to also sell the Jackson Property free and clear of all liens. That motion was noticed for May 5, 2010, the adjourned hearing date of the first motion regarding the Ypsilanti Property.

On May 4, 2010, one day prior to when both of the sale-authorization motions were set to be heard in state court, Prime filed its Objections to Comerica Bank's

Application for Receiver to Execute Purchase Agreement and to Convey 505 N.W. Jackson Avenue, Jackson, Michigan 49203 Free and Clear of Liens and Interests ("Objections") in the State Court Action. (Dkt. 6, Ex. C). The Objections set forth roughly the same facts that are alleged in instant Complaint, argued that the Continuing Collateral Mortgage was a fraudulent transfer, and asked that the court deny Comerica and the Receiver's motions.

On May 5, 2010 a hearing was held and the state court entered an order granting the Receiver the authority to convey the Jackson Property free and clear of all liens and interests. (Dkt. 19, May 5, 2010 Hr'g Tr.; Dkt. 6, Ex. E., Order Granting Receiver Authority to Convey Jackson Property Free and Clear of Liens and Interests) (hereinafter the "Authorization Order").

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a legally sufficient claim has been pleaded in a complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual

allegations as true. *Ziegler v IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

An assessment of the facial sufficiency of the Complaint must ordinarily be undertaken without resort to matters outside the pleadings. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). If a court does consider material outside the pleadings, the motion to dismiss must generally be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion. *Id.* "However, a court may consider exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (internal quotation omitted).

### III. ANALYSIS

#### A. The *Rooker-Feldman* Doctrine

Defendant argues, in part, that the *Rooker-Feldman* doctrine should bar Plaintiff's claims. The *Rooker-Feldman* doctrine—named after the decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 461 U.S. 462 (1983)—stands for the proposition that "the lower federal courts [are prohibited] from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 549, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). However, the *Rooker-Feldman* doctrine is one of limited application; as the Sixth Circuit has explained:

> The doctrine applies only when a plaintiff complains of injury from the state court judgment itself. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007); *see also Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006). "The *Rooker-Feldman* doctrine is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap. … [T]he doctrine is confined to those cases … when a plaintiff asserts before a federal district court that a state court judgment itself was

unconstitutional or in violation of federal law." *McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006).

Here, Prime's Complaint asserts that it was injured when Comerica drafted and recorded the May 11, 2009 Continuing Collateral Mortgage on the Jackson Property, conduct which Prime characterizes as being akin to a fraudulent transfer. Thus, it is the recording of the continuing collateral mortgage that is the claimed-source of Prime's injury, not the Authorization Order. The fact that the state court's Authorization Order may have arguably embraced Comerica's allegedly fraudulent conduct does not mean that the Authorization Order was the source of Prime's injury. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., *then there is jurisdiction* and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. at 293 (emphasis added) (citations omitted); *see also Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (because plaintiff did not complain of injuries caused by the state court judgment, "even if the independent claim was inextricably linked to the state court decision, preclusion law was the correct solution").

Accordingly, the *Rooker-Feldman* doctrine does not operate to deprive the Court of jurisdiction over this matter.

**B.     Res Judicata**

Defendant also seeks dismissal of the complaint on the basis of res judicata. "In Michigan, res judicata 'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.' Michigan 'has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.'" *Ludwig v. Township of Van Buren*, 682 F.3d 457, 460 (6th Cir. 2012) (quoting *Adair v. State*, 460 Mich. 105, 680 N.W.2d 386, 396 (2004)).

The Court has thoroughly reviewed the exhibits in this case, including the transcripts of the April 14, 2010 and May 5, 2010[3] hearings held in the State Court Action. Based upon that review, the Court concludes that none of the three conditions necessary for the application of res judicata is present in this case.

First, it does not appear to this Court that the prior action was, in fact, decided on the merits. The Authorization Order merely gave the Receiver the legal authority to sell the Jackson and Ypsilanti properties free and clear of any other parties' interest. The Authorization Order does not address the merits of Prime's fraudulent transfer argument, nor does it appear to resolve the mortgage priority dispute between Prime and Comerica. And, from a careful reading of the May 5,

---

[3] The transcript from the May 5, 2010 hearing was identified as being attached to Comerica's Motion to Dismiss as Exhibit D; however, the document filed as Exhibit D was a duplicate copy of the document identified as Exhibit E, the Authorization Order. The correct version of Exhibit D (Dkt. 19) was ultimately filed on August 6, 2013, the date the Court heard oral argument in this matter.

2010 transcript, it is clear that the state court did not intend for the Authorization Order to address or resolve those issues.  The state court was merely entering an order—at the request of the parties, no less—for the purpose of disposing of the Properties.  (*See* Dkt. 6, Ex. E; Dkt. 19).

Second, although Prime was at least nominally involved in the State Court Action, by virtue of filing its Objections, it cannot properly be viewed as a "party" in the case, nor as having had "assumed control over the litigation."  *See Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) (discussing limited circumstances where non-parties have been found subject to preclusion).  The State Court Action was between Comerica on the one side, and Notzrim, JRRMM, and Ypsilanti R&R Mini Mart on the other.  Prime filed its Objections in order to alert the state court of a potential issue with the ownership of the assets which were about to be sold, and the state court took the position that this issue was better resolved in the Bankruptcy Court.  For reasons that are unknown, Prime did not formally move to intervene in the State Court Action.  It also cannot be known whether such a motion would have been granted.  Prime's limited involvement can hardly be construed as having asserted control over the State Court Action.

Third, as just stated, this matter was not, and likely could not have been, resolved in the State Court Action.  The statements made during the April 14, 2010 and May 5, 2010 hearings make it clear that the parties, as well as the state court,

believed the Bankruptcy Court was the proper forum in which to resolve Prime's claims.[4]

Finally, although the Court did direct the parties to brief the question of whether the Authorization Order could have been appealed to the Michigan Court of Appeals, the preceding analysis renders that question largely moot.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (Dkt. 6) is **DENIED**.  Defendant has until April 14, 2014, to answer the complaint.

**SO ORDERED**.

Dated:  March 24, 2014                     s/Terrence G. Berg
                                           TERRENCE G. BERG
                                           UNITED STATES DISTRICT JUDGE


## Certificate of Service

I hereby certify that this Order was electronically submitted on March 24, 2014, using the CM/ECF system, which will send notification to all parties.

                                           s/H. Monda for A. Chubb
                                           Case Manager

---

[4] The record before this Court does not reveal why Prime's claims were not subsequently resolved during the bankruptcy proceedings; regardless, whether the Bankruptcy Court proceedings may have had a possibly preclusive effect is not presently before this Court.