UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME FINANCIAL, INC.,

    Plaintiff,

              Case No. 13-12236
  v.           HON. TERRENCE G. BERG

COMERICA BANK,

    Defendant.

                 /

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 39)

This matter is before the Court on Defendant Comerica Bank's ("Comerica's") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed on December 1, 2014.  (Dkt. 39).  The parties fully briefed this matter and the Court held a motion hearing on February 18, 2015.  For the reasons that follow, the Court **GRANTS** Comerica's motion for summary judgment.

## I.  UNDISPUTED FACTS[1]

This case concerns a dispute between Defendant Comerica and Plaintiff Prime Financial ("Prime") over who has priority of right concerning mortgages they each took on a piece of real property located at 505 N.W. Avenue in Jackson, Michigan (the "Jackson Property").  Defendant Comerica, a Texas banking

---

[1] Plaintiff Prime Financial failed to follow the Court's Motion Practice Guideline (F) in its response brief.  Under this guideline, the response to a Rule 56 motion "must begin with a 'Counter-statement of Material Facts' stating which facts are admitted and which are contested."  Given Prime's failure to comply with this guideline, Comerica's statement of material facts is deemed admitted for purposes of this motion.  Moreover, from a review of Prime's briefing and argument, the Court is also satisfied that there is no material dispute between the parties as to the facts recited here, even were it not for Prime's failure to follow the Court's guideline.

association, obtained the Jackson Property by Sheriff's Deed on February 28, 2007. (Dkt. 39, p. 2.)  On October 31, 2007, Mr. Mark Rankin offered to buy the Jackson Property from Comerica Bank.  The purchase offer listed Rankin's wholly-owned company, Notzrim Property Management ("Notzrim"), as the buyer.  (*Id.*)  As the seller of the Jackson Property and the lender in the transaction, Comerica assigned different employees to handle each aspect of the transaction.  (*Id.*)  Comerica thus loaned money to Rankin's company, Notzrim, so it could make the purchase.

During the loan process, Rankin indicated that Notzrim would receive the loan but not take title to the Jackson Property, and that instead, he would establish a separate limited liability company, or L.L.C., to take title.  (Dkt. 39, Ex. 5.) Rankin then formed Jackson R & R Mini-Mart ("JRRMM").  (*Id.* at p. 2).  JRRMM granted Comerica a mortgage on the Jackson Property securing Notzrim's loan[2] (the "Comerica Mortgage").  (*Id.* at Ex. 7).  However, because of an internal communication problem, Comerica mistakenly placed Notzrim's name on the covenant deed to the Jackson Property (rather than JRRMM's name) and delivered it to Notzrim at closing, not to JRRMM as the parties had agreed upon.  (*Id.* at Ex. 8).  On September 7, 2007, Notzrim's deed and the Comerica Mortgage were simultaneously recorded in the Jackson County Register of Deeds.

---

[2] The Comerica Mortgage states that the mortgage is "made to secure when due, whether by stated maturity, demand, acceleration, or otherwise, all existing and future indebtedness ("Indebtedness") to Mortgagee of Notzrim Property Management Company ("Borrower") and/or Mortgagor, including without limit payment of One Million Dollars ($1,000,000)…"  (Dkt. 39, Ex. 7).

Months later, on May 8, 2008, Notzrim obtained a $150,000 loan from Prime, a Michigan corporation, in exchange for granting a mortgage (the "Prime Mortgage"), also on the Jackson Property, recorded on March 3, 2009 in the Jackson County Register of Deeds. (Dkt. 1, p. 2-3). Aaron Jade, an attorney, formed Prime in 1990 for the purpose of providing loans to subprime borrowers — those who cannot obtain loans from traditional financial institutions. (Dkt. 39, Ex. 9, Jade Dep., p. 6). At the time Prime made its loan to Notzrim in 2008, the Comerica Mortgage was a matter of public record. Moreover, during the loan qualification process, Prime's loan broker informed it that Comerica had a prior mortgage on the property. (*Id.* at p. 8). Further, Prime's attorney Michelle Levy, also discovered the Comerica Mortgage while preparing Prime's loan documents. (Dkt. 39, Ex. 11, Levy Dep., at p. 10).

According to its terms, the Prime Mortgage was intended to be a second mortgage, subordinate to the Comerica Mortgage. Prime's commitment letter to Mr. Rankin, dated February 25, 2008, states that he was approved for a "Second Mortgage Loan." (Dkt. 39, Ex. 10). Moreover, the Prime Mortgage explicitly acknowledges Comerica's first position since it states that "Mortgager is the fee simple owner of the Mortgaged Premises, free of all liens and encumbrances, except a first Mortgage executed by [Jackson] R & R Mini-Mart, LLC as Mortgager, in the original principal amount of $1,000,000.00 in favor of Comerica Bank as Mortgagee, recorded September 20, 2007…" (Dkt. 40, Ex. 4).

3

The terms of the Prime Mortgage further reveal that Prime had notice of Comerica's mistake at the time it made the loan. The mortgage lists Notzrim as the mortgagor and fee simple owner of the Jackson Property. (*Id.*) Further, as discussed above, it warrants that the only outstanding lien on the Jackson Property is the Comerica Mortgage from JRRMM. (*Id.*) Thus, the Prime Mortgage indicates that Prime was aware that JRRMM had a conveyed a mortgage for the Jackson Property even though Notzrim was the fee simple owner of the property.

In May 2009, Notzrim defaulted on the Comerica Mortgage. Following the default, Comerica became aware that it had mistakenly granted the covenant deed to Notzrim rather than to JRRMM. On May 11, 2009, Notzrim granted Comerica a mortgage on the Jackson Property (the "Continuing Collateral Mortgage") with language intending to make the mortgage effective as of September 2007, when Comerica originally made the $1 million loan to Notzrim. (Dkt. 39, Ex 16). The Continuing Collateral Mortgage was recorded on May 13, 2009 in the Jackson County Register of Deeds.

On August 5, 2009, Comerica brought suit against Notzrim, JRRRM and the Ypsilanti R & R Mini Mart in Washtenaw County Circuit Court, Case No. 09-923-CH (the "State Court Action.")[3] During this action, the state court appointed a receiver empowered to sell JRRMM's assets. Later, on November 13, 2009, Notzrim

---

[3] The Ypsilanti R & R Mini-Mart is not relevant to the issues in this motion.

conveyed a warranty deed to the Jackson Property to JRRMM for the stated consideration of $1.  (Dkt. 39, Ex. 17).

Following a hearing in the State Court Action on May 5, 2010, the court authorized the receiver to sell the Jackson Property for $155,000 free and clear of all liens and interests, including the Prime Mortgage, and to disburse the proceeds of the sale directly to Comerica.  (Dkt. 6, Ex. E).

On May 19, 2013, Prime brought suit in this Court alleging that Comerica's actions constituted (1) a fraudulent transfer; (2) fraud; and (3) tortious interference with a business relationship/expectancy.  (Dkt. 1).

On June 25, 2013, Comerica filed a motion to dismiss for lack of jurisdiction and on the basis of res judicata.  (Dkt. 6).  The Court held a hearing on this motion on August 12, 2013.  During the hearing, the Court asked Prime's counsel several times whether Prime knew about the Comerica Mortgage at the time it made the Prime Mortgage.  Prime's counsel represented that Prime had no knowledge of the Comerica Mortgage prior to making its loan, and that it would not have made the second loan if it had known of the Comerica Mortgage.[4]  On March 24, 2014, the

---

[4] In response to the Court's direct questioning on the issue, Prime's counsel responded "I could tell you absolutely that Prime Financial is a hard asset lender and did not know about the previous mortgage and would not have made the loan had it known." (Dkt. 45, p. 19).  This statement was shown to be false by the evidence submitted in support of the motion for summary judgment.  At the hearing on the instant motion, the Court demanded an explanation from Prime's counsel for these misstatements of fact.  Prime's counsel apologized and attributed them to a mistake.  Prime's counsel is admonished to take great care to avoid such mistakes in the future, both in view of counsel's duty of candor to the Court and his duty to conduct diligent investigation before making assertions of fact before the Court.

Court denied Comerica's motion to dismiss for lack of jurisdiction and for res judicata. (Dkt. 23).

On December 1, 2014, Comerica filed this motion for summary judgment. (Dkt. 39). The matter was fully briefed and the Court held oral argument on February 18, 2015.

## II. ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party "'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009)).

### B. Discussion

All of Prime's claims stem from its allegation that the Prime Mortgage is superior in right to the Comerica Mortgage. As such, the Court must first determine which party holds the superior interest in the Jackson Property.

### 1. Prime was not a Good-Faith Purchaser and as a result, the Prime Mortgage was Subordinate to the Comerica Mortgage.

Because this is a state law claim between citizens of different states, the Court's jurisdiction rests on diversity grounds. As such, the Court must apply the "substantive law of the forum state of Michigan." *Bambas v. CitiMortgage Inc.*, 577 Fed. App'x 461, 65 (6th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Mich. Comp. Laws § 565.29, a "race-notice" statute, governs the priority of mortgages under Michigan law. It states:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded…

Under this section, "the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." *Richards v. Tibaldi*, 272 Mich. App. 522, 539 (2006). "Michigan is a race-notice state, and owners of interests in land can protect their interests by properly recording those interests." *Id.* (internal quotation marks and citation omitted).

"A good-faith purchaser is one who purchases without notice of a defect in the vendor's title." *Michigan Nat'l Bank & Trust Co. v. Morren*, 194 Mich. App. 407, 410 (1992). The Michigan Supreme Court has clarified the concept of notice in the real estate context, stating that a party has notice when he "has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them..." *Richards*, 272 Mich. App. at 539 (internal quotation marks omitted) (citing *Kastle v. Clemons*, 330 Mich. 28, 31 (1951)).

Thus, determining whether a party has notice is central to the question of whether the party can claim priority as a good-faith purchaser. Notice can be either actual or constructive. *Id.* "Regarding actual notice, a party who knows at the time a deed is received that the grantor lacks title to the property being conveyed or has notice that the grantor may not have title [the party] cannot be a bona fide purchaser." *Id.* at 539-40. Constructive notice is "notice that is imputed to a person concerning all matters properly of record, whether there is actual knowledge of such

matters or not." *Id.* at 540 (citing 1 Cameron, Michigan Real Property Law (3d ed.), § 11.23 p. 397).

In the context of mortgages, actual or constructive notice of a prior mortgage precludes a party from taking as a good-faith purchaser. *See Morren*, 194 Mich. App. at 410 (plaintiffs were not good-faith purchasers where there was undisputed evidence that plaintiffs' decedent had notice of a prior unrecorded mortgage on the property); *Furnari v. Wells Fargo Bank N.A.*, No. 264864, 2006 WL 664843, at *2 (Mich. Ct. App. Mar. 16, 2006) (where Plaintiffs had actual knowledge of prior mortgages, they were not good-faith purchasers, even though they recorded first).

Moreover, courts find that mortgagees who intend to obtain subordinate mortgages have notice. *See Bank of New York v. Fifth Third Bank*, No. 282499, 2009 WL 1361958, at *2 (Mich. Ct. App. May 14, 2009) (finding that defendant was not a good faith purchaser where it was "undisputed that defendant was aware at all times before it executed its mortgage that the mortgage was intended to be subordinate…").

Here, it is undisputed that Prime had actual notice of the Comerica Mortgage on the Jackson Property. The Comerica Mortgage was a matter of public record when Prime made its loan. Prime learned from its loan broker about the existence of the Comerica Mortgage, and Prime's attorney discovered it as a prior lien.

In addition to Prime's actual knowledge, it is clear that, at the time of the transaction, it *intended* the Prime Mortgage to be subordinate to the Comerica

9

Mortgage.  First, the terms of the Prime Mortgage explicitly state that the Jackson Property is "free of all liens and encumbrances, except a first Mortgage executed by R & R Mini-Mart, LLC…"[5]  Further, Prime's loan approval was an "approval of a second mortgage loan."  Lastly, Prime's owner Aaron Jade admits that he "thought [he] had a second mortgage until we did a search."

In its response to Comerica's motion for summary judgment, Prime does not, and could not, dispute that it had notice.  Instead, it alleges that its notice was somehow nullified by Comerica's mistake in obtaining a mortgage from JRRMM instead of Notzrim in September, 2007.  Prime fails to cite any authority supporting the proposition that a mistake by a party with superior interest transforms a junior interest with notice into a good-faith purchaser.[6]  Comerica made a mistake in conveying the deed to Notzrim while simultaneously obtaining a mortgage from JRRMM to secure its $1 million loan.  However, this mistake did not transform Prime's notice into lack of notice.

Furthermore, under the doctrine of after-acquired title, JRRMM did have a valid interest in the Jackson Property once it acquired the deed from Notzrim.  This doctrine states that "if a grantor by warranty deed conveys an estate that the

---

[5] Prime likely knew of the Comerica Mortgage because the Prime Mortgage lists Mr. Rankin, JRRMM and Notzrim among the borrowers.  Thus, Prime was dealing directly with parties who had knowledge of the prior mortgage.  And, Prime had notice of Comerica's mistake as the Prime Mortgage listed Notzrim as the owner of the property yet acknowledged that JRRMM had granted a prior mortgage.

[6] The Court notes that Comerica's mistake was rather innocent.  Rankin was the sole owner of both Notzrim and JRRMM.  Further, Comerica both sold the land to Notzrim and financed the transaction.  Moreover, the undisputed record shows that Rankin and Comerica intended JRRMM to take title.  While Comerica could have exercised greater caution in conducting the transaction, there are no facts that suggest that the mistake was a product of ill intentions.

grantor does not own and subsequently acquires title to the estate, that title inures to the benefit of his or her grantee." *Richards*, 272 Mich. App. at 541. This doctrine extends to mortgages, not just deeds. *Bambas*, 577 Fed. App'x at 467. Here, JRRMM warranted in the Comerica Mortgage that it had an interest in the Jackson Property. It subsequently obtained the deed to the Jackson Property from Notzrim. As such, this interest inured to Comerica's benefit.

Moreover, Comerica could also likely prevail under the equitable mortgage doctrine. Comerica's mistake was a mutual mistake between it and Notzrim, as all parties to the transaction intended for JRRMM to take title to the Jackson Property. Under these circumstances, a court could find that an equitable mortgage arose. *See Countrywide Home Loans, Inc. v. Peoples' Choice Home Loan Inc.*, No. 298399, 2011 WL 6118597, at *8 (Mich. Ct. App. Dec. 6, 2011) ( "[a] court of equity may impose and foreclose an equitable mortgage on a parcel of real property when no valid mortgage exists but some sort of lien is required by the facts and circumstances of the parties' relationship.") (citing 1 Cameron, Michigan Real Property Law (3d ed), Mortgages § 18.5, pp. 681-82).

Lastly, and most importantly, any errors in the Comerica Mortgage are ultimately irrelevant to the inquiry of whether Prime had notice. Notice under the statute looks at the time period before the subsequent purchaser obtained its interest and asks whether a party had notice then. Again, notice is simply "whatever is sufficient to direct [the] attention of a purchaser to the prior rights or

equities of third persons, and to enable him to ascertain their nature by inquiry…"
*Id.* at *5. Here, Prime clearly had notice about the Comerica Mortgage prior to
obtaining the Prime Mortgage from Notzrim. That is the end of the inquiry. Prime
was not a good-faith purchaser, and as a result, the Prime Mortgage was
subordinate to the Comerica Mortgage.[7]

### 2. Fraudulent Transfer

Having determined that Comerica held a superior interest in the Jackson
Property, the Court now addresses Prime's claim that Comerica's actions to correct
its mistake constituted a fraudulent transfer.

Under Mich. Comp. Laws § 566.34(1):

> A transfer made or obligation incurred by a debtor is fraudulent
> as to a creditor, whether the creditor's claim arose before or after
> the transfer was made or the obligation was incurred, if the
> debtor made the transfer or incurred the obligation in either of
> following:
>
> (a) With actual intent to hinder, delay, or defraud any
> creditor of the debtor.
>
> (b) Without receiving a reasonably equivalent value in
> exchange for the transfer or obligation…

Comerica correctly notes that Prime cannot establish a fraudulent transfer under
Mich. Comp. Laws § 566.34(1)(b) as a matter of law because Mich. Comp. Laws §
566.33 states that "[v]alue is given for a transfer or an obligation if, in exchange for

---

[7] The fact that Prime had actual notice of Comerica's prior mortgage is bolstered by the frank, but
not entirely admirable, admission by Mr. Jade that Prime's lawsuit is an attempt to "take
advantage" of Comerica's mistake.

the transfer or obligation, property is transferred or an antecedent debt is secured

or satisfied."  Here, Notzrim's grant of the Continuing Collateral Mortgage secured

the antecedent $1 million loan Notzrim received from Comerica.  As such, value was

given as a matter of law under § 566.33.

In addition, the Court finds that Prime cannot establish a fraudulent

conveyance under § 566.34(1)(a).  The statute enumerates eleven factors for courts

to consider in determining whether there was actual intent to defraud a creditor.

*See* § 566.34(2).[8]  Beyond listing the factors and offering a conclusory statement that

the factors support a finding that the Continuing Collateral Mortgage constituted a

fraudulent transfer, Prime provides no analysis in support of its conclusion that

Comerica's actions were fraudulent.

---

[8] Section 566.34 (2) of Mich. Comp. Laws provides in pertinent part as follows:
(2) In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether 1 or more of the following occurred:

      (a) The transfer or obligation was to an insider.
      (b) The debtor retained possession or control of the property transferred after the transfer.
      (c) The transfer or obligation was disclosed or concealed.
      (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
      (e) The transfer was of substantially all of the debtor's assets.
      (f) The debtor absconded.
      (g) The debtor removed or concealed assets.
      (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
      (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
      (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
      (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

The Court has reviewed these factors and does not find that any of them apply to Comerica's drafting of the Continuing Collateral Mortgage or to Notzrim's transfer of the deed to JRRMM.

The Continuing Collateral Mortgage was not a transaction between insiders but between a debtor and a creditor. Nor did the transaction allow the debtor to retain control of the property, as Comerica gained control of the Jackson Property, not Notzrim. And, as previously discussed, there was underlying value in this transaction as the Continuing Collateral Mortgage secured Notzrim's antecedent debt to Comerica.

For the same reasons, Notzrim's transfer of the Jackson Property's deed to JRRMM was not a fraudulent transfer. No creditor was defrauded as a result of the transfer. As previously discussed, Comerica held a superior interest in the Jackson Property. Notzrim's transfer of the deed to JRRMM merely corrected the error that Comerica made in September 2007. It did not leave Prime worse off; Prime had a subsidiary interest both before and after the transfer of the deed.

The Court also notes that Comerica's actions were not secretly forged in the shadows, but rather openly cast into the public light of the Jackson County Register of Deeds: both the Continuing Collateral Mortgage and the deed transfer were duly recorded.

14

For these reasons, the Court **GRANTS** summary judgment as to Count One because even when viewing the evidence in the light most favorable to Prime, the Court finds that Prime cannot establish a fraudulent transfer.

### 3. Fraud

Prime's second count alleges that Comerica committed fraud by drafting the Continuing Collateral Mortgage to defeat the Prime Mortgage and by failing to inform the state court that it had mistakenly taken title from JRRMM. "There are essentially three theories to establish fraud: (1) traditional common-law fraud, (2) innocent misrepresentation, and (3) silent fraud." *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 26-27, (1998)

Prime does not specify which theory of fraud it relies upon. In any case, Prime's fraud claim must fail. Under Federal Rule of Civil Procedure 9(b), to plead fraud "a party must state with particularity the circumstances constituting fraud…" Prime's complaint and response fail to meet this this standard. And even if the Court construed Prime's pleading as meeting the Rule 9(b) particularity standard, its fraud claim must fail because Comerica held a primary interest in the Jackson Property at all times. As such, Comerica did not commit fraud in asserting that it had a first mortgage in the underlying State Court Action. Further, the parties agree that Comerica merely sought to correct its prior mistake by drafting the Continuing Collateral Mortgage and having JRRMM receive title from Notzrim. Thus, Comerica never acted with intent to defraud Prime. Consequently, there is

15

no genuine issue of material fact regarding Count Two of the complaint, and summary judgment is **GRANTED** on this Count as well.

### 4.  Tortious Interference with an Expectancy

Prime's next count charges that Comerica tortiously interfered with an expectancy.  The elements of tortious interference with an expectancy are: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff.  *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 217 Mich. App. 687, 698-99 (1996).  "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference."  *Id.*

On the record of undisputed facts before the Court, Prime's claim fails at the starting gate because it cannot show the existence of a valid expectancy.  "In order to establish this, the expectancy must be a reasonable likelihood or probability, not mere wishful thinking."  *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assoc.'s, Architects & Planners Inc.*, 492 Mich. 40, 45 (2012).  Prime alleges that Comerica's actions tortiously interfered with its expectancy of having a first mortgage lien on the Jackson Property.  Despite Prime's counsel's initial assertions to the contrary, the record definitively establishes that at the time it made its loan Prime's actual expectancy was to grant a second mortgage on the Jackson Property.  That Prime

adjusted its expectations in the hopes of taking advantage of Comerica's mistake does not change the fact that Prime's original expectation in making its loan was to have a second mortgage lien.  That expectancy was fulfilled.

Given that Prime cannot establish that it had a valid expectancy of obtaining a first mortgage, Comerica did not tortiously interfere with Prime's business expectancy.  Thus, summary judgment as to Count Three is **GRANTED**.

### III.   CONCLUSION

For the reasons state above, the Court **GRANTS** Comerica's motion for summary judgment (Dkt. 39) as to all counts.

**SO ORDERED.**

Dated:  March 5, 2015                                s/Terrence G. Berg
                                                     TERRENCE G. BERG
                                                     UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 5, 2015, using the CM/ECF system, which will send notification to all parties.

                                s/A. Chubb
                                Case Manager